THE STATE, EX REL. COPELAND, *v.* JUDGES OF THE COURT OF
APPEALS OF THE THIRD APPELLATE DISTRICT.

[Cite as State, ex rel. Copeland, v. Judges (1981),
67 Ohio St. 2d 1.]

(No. 80-1369—Decided July 1, 1981.)

2

*Rodney M. Arthur Co., L.P.A., Mr. Joseph W. O'Neil* and *Mr. Mark A. Robinson,* for relator.

*Messrs. Weaner, Hutchinson, Zimmerman & Bacon* and *Mr. Roger V. Bacon,* for respondents.

*Per Curiam.* The relator seeks to have this court compel the Court of Appeals to grant him a complete transcript of his trial without cost and to appoint counsel for his appeal. Relator asserts that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that an indigent defendant, convicted of a misdemeanor punishable by incarceration and monetary fines, be provided a trial transcript and trial records at public expense and court-appointed counsel in order to perfect an effective appeal.

The rights to a transcript and appointed counsel can only exist under the constitutional guarantees of due process and equal protection found in the Fourteenth Amendment, and in Sections 1, 2, 16 and 19 of Article I of the Ohio Constitution.[2]

[2] "The right to appointed counsel and a transcript can only exist under the constitutional guarantees of due process and equal protection of the law found in the Fourteenth Amendment to the United States Constitution, and in Sections 1, 2, 16 and 19 of Article I of the Ohio Constitution. We look to federal case law to delineate the right of relators under both the state and federal provisions." *State, ex rel. Heller, supra,* at page 8.

Beginning with *Griffin* v. *Illinois* (1956), 351 U.S. 12, the United States Supreme Court has delineated the limits of the constitutional guarantee to a transcript on appeal. In *Griffin,* the denial of a trial transcript to indigent petitioners, who sought to appeal convictions for armed robbery, was held to violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[3] The court held, at page 17, that "[i]n criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color." Further, the court stated, at page 18, that "[t]here is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance."

Although the court held, at page 19, in *Griffin* that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts," that right is not unqualified. The court specifically pointed out that a state is not required to purchase a transcript in every case where an indigent criminal defendant cannot buy it, so long as a means of affording "adequate and effective" appellate review is provided to that defendant. *Id.,* at page 20.

In *Douglas* v. *California* (1963), 372 U.S. 353, 355, the reasoning of *Griffin* was extended to the right to counsel on appeal.[4] *Douglas,* however, did not set forth an absolute rule that counsel must be afforded an indigent criminal defendant in every appeal. The court, at page 356, held that "* * * a State can, consistently with the Fourteenth Amendment, provide for differences [in the appellate process] so long as the result

---

[3] In *Griffin,* the United States Supreme Court reviewed an Illinois statute which required a bill of exceptions to be prepared in order to obtain full appellate review of alleged errors.

[4] In *Douglas,* the United States Supreme Court examined a California court rule that appellate counsel would be appointed only after an initial review by a state appellate court which would determine whether the appointment would be of advantage to the defendant or helpful to the court. Such an initial determination forced the state appellate court to prejudge the merits of the case before counsel was appointed. That procedure was held to deny an indigent any real chance of showing that his appeal had "hidden merit." *Id.,* at page 356.

does not amount to a denial of due process or an 'invidious discrimination'***."

In *Draper* v. *Washington* (1963), 372 U.S. 487, the court, at page 495, reiterated its holding in *Griffin* that "a state need not purchase a stenographer's transcript in every case where a defendant cannot buy it." The court held that "[a]lternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. ***Moreover, part or all of the stenographic transcript*** will not be germane to consideration of the appeal***," and the state will not be required to supply one in such circumstances. *Id.*[5]

The United States Supreme Court in *Mayer* v. *Chicago* (1971), 404 U.S. 189, extended the rationale of *Griffin* and *Draper* to non-felony[6] cases and, also, by implication, the *Douglas* rationale.[7] The court in *Mayer* stressed, however, that a record of sufficient completeness does not automatically translate into a complete verbatim transcript. *Id.*, at page 194. Although a full verbatim record is required where it is necessary to assure the indigent an appeal as effective as that available to the defendant with financial resources, a "colorable need" for a complete transcript must be demonstrated before the burden will be placed upon the state to show that only a portion of the transcript or an alternative device will suffice for an effective appeal. *Id.*, at page 195.

In *Britt* v. *North Carolina* (1971), 404 U.S. 226, decided the same day as *Mayer*, the court further identified the factors

---

[5] "***If, for instance, the points urged relate only to the validity of the statute or the sufficiency of the indictment upon which conviction was predicated, the transcript is irrelevant and need not be provided. If the assignments of error go only to rulings on evidence or to its sufficiency, the transcript provided might well be limited to the portions relevant to such issues. Even as to this kind of issue, however, it is unnecessary to afford a record of the proceedings pertaining to an alleged failure of proof on a point which is irrelevant as a matter of law to the elements of the crime for which the defendant has been convicted." *Draper* v. *Washington* (1963), 372 U.S. 487, 495-496.

[6] The United States Supreme Court had earlier reversed a refusal by an Oklahoma Court of Criminal Appeals to pay for a transcript required by an indigent to perfect his appeal from a "petty" offense conviction in *Williams* v. *Oklahoma City* (1969), 395 U.S. 458. "Petty offense" was defined by the Oklahoma court as a "violation of a city ordinance, quasi-criminal in nature."

[7] See *State, ex rel. Heller,* v. *Miller, supra,* at page 10.

relevant for a determination of need for a free transcript.[8] Those factors were determined by the court, at page 227, to be "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript."

This court has consistently recognized that a defendant convicted of a felony has a constitutional right to counsel and to a trial transcript on an appeal as of right to the Court of Appeals from his judgment of conviction. *State* v. *Catlino* (1967), 10 Ohio St. 2d 183; *State* v. *Shepard* (1967), 10 Ohio St. 2d 264; *State* v. *Talley* (1967), 11 Ohio St. 2d 190. However, such right does not extend automatically to cases where an alternative method to exemplify errors exists. *Toledo* v. *Smith* (1965), 3 Ohio St. 2d 80. Rather, the necessity for a transcript, and, by implication, for counsel on appeal, is based upon an analysis of the request by use of the two *Britt* factors. *State* v. *Scott* (1972), 31 Ohio St. 2d 1; *State* v. *Arrington* (1975), 42 Ohio St. 2d 114; and *State, ex rel. Seigler,* v. *Rone* (1975), 42 Ohio St. 2d 361.

In applying the *Britt* factors, this court has held that some claim must be made as to what specific value the transcript would have, "independent of the overworked concept that what the 'rich man' can buy must *always* be supplied to the 'indigent.' " *State* v. *Scott, supra,* at page 11. Further, we have held that the *Britt* factors of need are independent of each other, and the existence of either would justify denial of a transcript. *State* v. *Arrington, supra,* at page 116.

Mandamus is a proper remedy to compel appointment of counsel on appeal and the provision of a transcript. See *State, ex rel. Wright,* v. *Cohen* (1962), 174 Ohio St. 47. An actual appeal must be pending, however, before a transcript will be provided. *State, ex rel. Partee,* v. *McMahon* (1963), 175 Ohio St. 243; *State, ex rel. Catlino,* v. *Clerk of Courts* (1967), 9 Ohio St. 2d 101; *State* v. *Williams* (1967), 11 Ohio St. 2d 236. In order for a writ of mandamus to be granted in this cause, we must find that relator has a clear legal right to the relief prayed for,

---

[8] *Britt* concerned the need for a transcript of a murder trial which ended in a mistrial at the second trial. Nevertheless, we consider these factors applicable to the issue of a free transcript on appeal. See *State* v. *Scott* (1972), 31 Ohio St. 2d 1.

that respondents are under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law. *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6, paragraph one of the syllabus.

Relator in the case *sub judice* has not satisfied the requirement of *State, ex rel. Heller,* v. *Miller, supra,* to show a clear legal right to a transcript and counsel on appeal. His complaint for writ of mandamus is bare of any showing of need for such extraordinary relief other than the fact of his indigency and that "[y]our Relator's [*sic*] will not be able to appeal his criminal conviction without representation and a transcript provided at public expense." The complaint fails to sufficiently demonstrate that the granting of the writ is necessary to a successful appeal.[9] "*Mayer* and *Britt* stand for the proposition that once an indigent defendant has made a colorable, as opposed to a particularized, showing that a complete or partial transcript of a prior proceeding is of value, the state must demonstrate that an available alternative device will provide substantially the same information, and serve substantially the same function, as a transcript." *State* v. *Peterson* (1976), 46 Ohio St. 2d 425, at page 429. That "colorable showing" has not been made here with regard to the right to a transcript and counsel on appeal.

Accordingly, the writ is denied.

*Writms denied.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

---

[9] We cannot discern from the face of the complaint whether the basis of appeal would be, *e.g.,* the constitutionality of the statute or some other theory which would not require a complete trial transcript.